**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

<u>NOT FOR PUBLICATION</u>

<u>LETTER-OPINION & ORDER</u>

June 12, 2006

<u>VIA U.S. MAIL & ELECTRONIC FILING</u>

Plaintiff <u>pro</u> <u>se</u>:
James Robert Hughes
SBI # 737797
Adult Diagnostic &
    Treatment Center
8 Production Way
Avenel, NJ 07001

Counsel for Defendants:
Lisa A. Puglisi
Deputy Attorney General
Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625

    Re:    **James Robert Hughes v. John D'Amico, Jr., et al.**
            **Civil Action No.: 05-3122 (JLL)**

Dear Litigants:

    This matter having been opened to the Court by way of Defendants' John D'Amico, Jr., Paul J. Contillo, Carmen Garcia, Heriberto Collazo (improperly spelled in the Complaint as "Cullazo"), Dominic Porrovecchio, Veleria Lawson, Kenneth L. Saunders, Ruby J. Washington, Peter J. Van Etten, and Thomas J. Iskrzycki (hereinafter collectively "Defendants") motion to dismiss the Plaintiff James Robert Hughes' (hereinafter "Plaintiff" or "Hughes") Complaint pursuant to Fed. R. Civ. P. 12(b)(6), in lieu of an Answer. The motion is resolved without oral argument. Fed. R. Civ. P. 78. For the reasons stated herein, Defendants' motion is GRANTED.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this motion.

    Plaintiff is currently serving an indeterminate term of confinement, subject to a thirty (30) year maximum, for rape, imposed on December 20, 1978. He has been eligible for consideration for parole since at least 1994. Plaintiff contends that on January 20, 2005, the Defendants

deliberately violated his constitutional right to a fair parole hearing by classifying him as a "2C" case instead of a "2A"[1] case for the purpose of using a different standard to justify denying parole. Plaintiff contends that the standard for "2C" cases focuses on likely recidivism alone, but that the standard for "2A" cases considers rehabilitation and treatment as well. Plaintiff contends that use of the "2C" standard permits the Parole Board to apply punishment for Plaintiff's past criminal history and forces him to max-out on his indeterminate sentence.

Plaintiff names as Defendants the individual members of the New Jersey State Parole Board. He seeks both injunctive relief and monetary damages.

By Opinion and Order dated September 9, 2005, this Court held that for the reasons set forth in therein, "the Complaint ordinarily would be subject to dismissal, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim, the Court will grant Plaintiff leave to file an amended complaint." Plaintiff's Amended Complaint was filed on October 6, 2005, and before the Court performed another § 1915 review, Defendants filed the present motion to dismiss.

Through the present motion to dismiss the facts have been expanded by the parties. It now appears undisputed that at the time of the filing of the Complaint, the State Parole Board had in fact utilized the improper standard, namely the new "2C" standard, when it denied him parole. Plaintiff appealed that decision to the full Board. On June 8, 2005, the panel reconsidered its decision and applied the "2A" standard, but came to the same conclusion and again denied parole. Accordingly, by letter dated June 23, 2005 ("June 23 Letter"), the full Board affirmed the panel's decision. The full Board noted that the panel had corrected its previous oversight, yet affirmed its own decision to deny parole. (June 23 Letter at 2). The full Board also enunciated the same standard under which Plaintiff says he is to be judged for parole – whether he is "capable of making an acceptable social adjustment in the community." (June 23 Letter at 2; Hughes Oct. 12, 2005 Affidavit). The letter indicated that the professional staff at the Adult Diagnostic and Treatment Center ("ADTC") recommended Hughes for parole, and that they considered mitigating factors such as "institutional adjustment has been favorable and minimum custody status achieved . . . . infraction free status, participation in programs specific to behavior, participation in institutional programs and average to above average institutional reports." (June 23 Letter at 2). Nevertheless,

The full Board found that the Adult Panel supported its decision to deny parole on

---

[1] "2A" refers to the now repealed Title 2A of the Sex Offender Act, N.J.S.A. 2A:163-4, et seq. "N.J.S.A. 2A:164-8 provides that 'any person committed to confinement ... may be released under parole supervision when it shall appear to the satisfaction of the state parole board, after recommendation by a special classification review board ... that such person is capable of making an acceptable social adjustment in the community.'" Artway v. Pallone, 672 F.2d 1168, 1179 (3d Cir. 1982).

> sufficient credible evidence in the record and based its decision on the fact that you have an extensive and repetitive prior criminal record consisting of 12 convictions, including related offense of a violent nature for Assault with Intent to Rape in 1965 and 1966 and Rape with Threat to Kill in 1971. In addition, you have experienced numerous incarcerations on all levels of the system and several opportunities on community supervision and have adjusted poorly each time to parole supervision. These experiences have failed to deter your criminal behavior.

(June 23 Letter at 2). It concluded by stating "Based on a consideration of the facts cited above, the full Board found that the Adult Panel appropriately determined that you are not capable of making an acceptable social adjustment if released on parole." (June 23 Letter at 2).

In light of Defendants' motion, the Court will dispense with the § 1915 review and address the arguments raised by the parties.

## **LEGAL STANDARD**

**A.**     **Motion to Dismiss and Summary Judgment**

The applicable inquiry under Federal Rule 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). The question is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236. Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 346 (3d Cir. 2001) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The Third Circuit has further noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

Fed. R. Civ. P. 12(b) provides that if matters outside the pleadings are presented and not excluded by the court, the motion shall be converted to one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Fed. R. Civ. P. 56. However, in the Third Circuit, such conversion is at the discretion of the court where the matters outside the pleadings consist only of: (1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public record;

and (4) matters integral to or upon which plaintiff's claim is based.  In re Bayside Prison Litig., 190 F. Supp. 2d 755 (D.N.J. 2002) (citations omitted).  Although the documents attached to Defendants' reply brief could arguably include any of these categories of materials, this Court informed the parties it would be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and, accordingly, the Court gave Plaintiff an opportunity to file a sur-reply.  Plaintiff's sur-reply was filed on December 15, 2005.

**B.**     **Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Prisoners may utilize § 1983 to challenge the constitutionality of parole procedures in actions seeking declaratory and injunctive relief.  See Wilkinson v. Dotson, 544 U.S. 74 (2005).

## LEGAL DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  He specifically contends that Defendants, State Parole Board members, in denying him parole, deprived him of due process by the improper application of a parole statute that came into effect after he was sentenced.

There is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause.  See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F. Supp. 2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).  Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, at *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J.

192, 203 (1983).  See also Watson v. DiSabato, 933 F. Supp. 390, 392-93 (D.N.J. 1996) (prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

The question remains what process is due to Plaintiff by the application of a parole statute that came into effect after he was sentenced.  Plaintiff was sentenced in 1978 to an indeterminate term, subject to a thirty (30) year maximum, under the pre-Code Sex Offender Act, N.J.S.A. 2A:164-3, and was committed to the ADTC.  The standard for parole under the Sex Offender Act has been thoroughly explained by the New Jersey Supreme Court:

> Under the Sex Offender Act, when a court committed an offender to ADTC for treatment, it sentenced him or her to an indeterminate term.  The pertinent statute, N.J.S.A. 2A:164-6, provided that "such order of commitment shall not specify a minimum period of detention, but in no event shall the person be confined or subject to parole supervision for a period of time greater than that provided by law for the crime of which such person was convicted."  Hence, the sentencing court could not fix a minimum term, and the indeterminate term was subject only to the maximum term imposable for the crime.  Significantly, parole was governed by the psychiatrically-oriented treatment-success standard of N.J.S.A. 2A:164-8. . . .

State v. Cruz, 593 A.2d 1169, 1171 (N.J. 1991).

> The purpose of the sex offender act is cure through treatment of the aberrations which caused the sexually deviant offenses rather than punishment.  To that end the act provides for release under parole supervision "when it shall appear to the satisfaction of the state parole board, after recommendation by a special classification review board appointed by the state board of control of institutions and agencies, that such person is capable of making an acceptable social adjustment in the community."  N.J.S.A. 2A:164-8.  The converse is that if one so committed does not so respond to treatment and remains a menace to the community, he may be retained in confinement for the maximum term authorized for the crime of which he was convicted.

State v. Clark, 323 A.2d 470, 472 (N.J. 1980).

Defendants admit that the Panel mistakenly used the notice of decision sheet that indicated the case was a "2C" case, and thus denied parole based on a substantial likelihood that Hughes would commit another crime if released on parole.  While that was the wrong standard, the Board panel did not violate Hughes' due process rights because his case was reconsidered applying the appropriate "2A" standard.  Under the "2A" standard, the Panel determined that Hughes was not capable of making an acceptable social adjustment if released on parole.

In his sur-reply, Plaintiff argues that the amended parole decision still applied the wrong standard because the Panel considered his prior criminal record, which consisted mostly of motor

vehicle convictions.  He further explains that he "does challenge the outcome of the parole decision because the outcome is the result of continuing to use the wrong standard, namely, the punitive aspects."  (Pl. Sur-reply at 2).

Despite Plaintiff's arguments, this Court agrees with Defendants' position that Plaintiff's due process rights were not violated because the Panel ultimately made its determination based on the "2A" standard and concluded that Plaintiff was not "capable of making an acceptable social   adjustment in the community" at that time.  While it is true that the Panel initially utilized the wrong standard, within months it reconsidered it decision and followed the correct standard.  Thus, under either standard his parole was denied.  Since it is well established that sex offenders have no constitutional right to parole prior to the expiration of the maximum term specified for the crime, Artway v. Pallone, 672 F.2d 1168, 1179-80 (3d Cir. 1982), Plaintiff cannot state a claim for a section 1983 violation because the thirty (30) year maximum has not been reached, and the claim is accordingly dismissed.

In as much as Plaintiff is challenging the parole decision itself, that decision lies with the Parole Board, id., and habeas corpus is the appropriate method for challenges to the outcome of the parole decision, see, e.g., Poole v. D.O.C., 2005 U.S. App. LEXIS 22469, at *4 (3d Cir. Oct. 19, 2005) (habeas corpus is the avenue for relief where the "attack on the integrity of the decision to deny parole necessarily implicates the validity of the parole decision"); McCray v. Dietz, 517 F. Supp. 787, 789 (D.N.J. 1980).  Thus, to the extent the relief Plaintiff is seeking is premised on the validity of the parole decision, that is not properly before this Court and is likewise dismissed.

## **CONCLUSION**

For the foregoing reasons, it is on this 12th day of June, 2006,

**O R D E R E D**  that Defendants' motion [CM/ECF Docket Entry #29] is **GRANTED** with prejudice and Plaintiff's Amended Complaint is dismissed; and it is further

**O R D E R E D**  that the Clerk of the Court shall **CLOSE** the Court's file on this matter.

 /s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE